IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SYMBOLOGY INNOVATIONS, LLC, | |
| Plaintiff, | CASE NO. 1:21-CV-00412-LY |
| v. | |
| MICHAELS STORES, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

MICHAELS STORES, INC.'S REPLY IN SUPPORT OF ITS RULE
12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

**Table of Contents**

I. THE '752 AND '369 PATENTS ARE INVALID ........................................................ 2

    A. *Alice* Step One: The asserted claims are directed to an abstract idea. ....................... 2

    B. *Alice* Step Two: The claims recite no inventive concept. ............................................ 6

    C. There are no factual or claim construction disputes preventing a ruling at
       the Rule 12 stage. ........................................................................................................ 9

II. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ..................................................................................6, 7, 11

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ..............................................................................5, 11

*Coding Techs., LLC v. Mississippi Power Co.*,
  No. 1:19-CV-994-LG-RHW, 2020 WL 8410430 (S.D. Miss. June 4, 2020) ..................8, 9, 10

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ..............................................................................7

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ..............................................................................9

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ..............................................................................7

*Finjan, Inc. v. Blue Coat System, Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) ..............................................................................6

*Idexx Labs., Inc. v. Charles River Labs., Inc.*,
  CV 15-668-RGA, 2016 WL 3647971 (D. Del. July 7, 2016) ....................................6

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017) ..............................................................................10

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) ..............................................................................12

*Jedi Techs., Inc. v. Spark Networks, Inc.*,
  No. CV 1:16-1055-GMS, 2017 WL 3315279 (D. Del. Aug. 3, 2017) ..................4, 13

*MyMail, Ltd. v. ooVoo, LLC*,
  934 F.3d 1373 (Fed. Cir. 2019) ..............................................................................13

*Nexrf Corp. v. Playtika Ltd.*,
  No. 320CV00603MMDCLB, 2021 WL 2874114 (D. Nev. July 7, 2021) ..................8

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017) ..............................................................................4, 8, 9

*Simio, LLC v. FlexSim Software Products, Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020) ..........................................................................................12

*Tuxis Techs., LLC v. Amazon.com, Inc.*,
    No. CV 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014) ..........................................7

*Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*,
    227 F. Supp. 3d 582 (E.D. Va. 2017) ................................................................................12

**Other Authorities**

Fed. R. Civ. P. Rule 12 ........................................................................................3, 4, 5, 12, 13

Symbology has filed over 220 lawsuits asserting claims of the same asserted patents here or of other patents in the same family. In over three dozen of those lawsuits, which involved defendants represented by the same counsel as Michaels, Symbology walked away and dismissed its claims with prejudice rather than defend its allegations on the merits against Rule 12 motions under § 101, sometimes without even responding to the motions. But now, for the very first time, Symbology has decided it should substantively oppose the Rule 12 motion. Symbology has employed a new tactic to delay the Court's determination by incorrectly contending there exists a claim construction issue that prevents the Court from ruling on § 101 on the pleadings. The Court may and should adopt Symbology's proposed constructions for purposes of evaluating Michaels' Motion to Dismiss, and those proposed constructions do not alter the ineligibility analysis, nor does Symbology explain how they might, which is fatal to its attempt to oppose a ruling on the pleadings. *See, e.g.*, *Jedi Techs., Inc. v. Spark Networks, Inc.*, No. CV 1:16-1055-GMS, 2017 WL 3315279, at *6 (D. Del. Aug. 3, 2017) ("Here, [plaintiff] failed to identify any specific claims which, if scrutinized during claim construction, could impact the [§ 101] analysis. Thus, the court considers it appropriate to analyze patent eligibility at this stage in the present case.") (citations omitted). Consequently, this motion is ripe for the Court's consideration.

Symbology's patents are directed to the abstract idea of data recognition and retrieval. Symbology nonetheless attempts to force its asserted claims to eligibility by repeatedly stating, in conclusory fashion, that the claims of the '752 and '369 Patents are directed not to an abstract idea, but to some technical solution. They are not. Although the patents describe the concept of data recognition and retrieval, that concept is an abstract idea ineligible for patenting. Moreover, neither the specification nor the claims identifies a specific way of implementing this concept. Tellingly, Symbology's Response does not meaningfully address Michaels' recited legal authority that

upheld the ineligibility of claims similar to those in the asserted patents. *See Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017) (affirming district court's grant of motion to dismiss pursuant to Rule 12(b)(6) for patent ineligibility of patents directed to decoding barcodes).

To the extent the claims of the '752 and '369 Patents capture any purported improvements, those improvements are to the abstract idea itself, not to any computer functionality. The Federal Circuit has held that, "[a]s a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."). That holding applies here.

The claims' recitation of non-specific limitations makes clear that the patentee intended to lay claim to any action whatsoever that results in practice of the general abstract idea. Such claims are precisely the type of claims that courts have repeatedly found ineligible. When there is no plausible reading of a patent that would enable it to satisfy the threshold inquiry under § 101, an early Rule 12(b)(6) dismissal is appropriate.

To avoid waste of judicial and party resources further litigating invalid patents, Michaels requests the Court dismiss Symbology's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

I. **THE '752 AND '369 PATENTS ARE INVALID**

    A.    *Alice* **Step One: The asserted claims are directed to an abstract idea.**

The claims of the asserted patents are directed to an unpatentable abstract idea because the claims cover nothing more than the concept of data recognition and retrieval. This idea, as recited,

is admittedly broad. The breadth of the idea, however, comes not from an over-generalization or over-simplification on the part of Michaels, as Symbology contends (*see*, *e.g.,* Dkt. No. 35 at 4), but from the very breadth of the claims, as "the 'level of abstraction' employed . . . in describing the claims must be consonant with the level of abstraction expressed in the claims themselves." *Idexx Labs., Inc. v. Charles River Labs., Inc.*, CV 15-668-RGA, 2016 WL 3647971, at *4 (D. Del. July 7, 2016) (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016)). Even after *Enfish*, courts continue to find that patents are directed to broad abstract ideas in accordance with the breadth of the idea claimed. Michaels' description of the abstract idea is not "untethered to the claim language" of the asserted patents (*see* Dkt. No. 35 at 12), but is drawn at an appropriate level of abstraction derived from the claims themselves. The abstract idea is broad, but that is the quintessential characteristic of abstract ideas and highlights the "pre-emption concern that undergirds [the] § 101 jurisprudence." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014). Moreover, the Supreme Court did not find it necessary to "delimit the precise contours of the 'abstract ideas' category." *Id.* at 2357. Accordingly, it is enough for Michaels to identify the abstract idea to which the claims are directed, which it has done. *See id.*

Symbology argues that the alleged invention claimed in the asserted patents constitutes "functional improvement over prior systems, solving computer based technological problems" (Dkt. No. 35 at 4), but the improvements recited by Symbology are just the benefits of practicing the abstract idea, not a technological improvement to technology. Nothing in the patents' claims allows a computer to do something it could not do before. *Cf. Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1308 (Fed. Cir. 2018) (holding eligible claims construed to require "a new kind of file that enables a computer security system to do things it could not do before"). Specifically, Symbology contends that the purported invention "improved upon prior systems in

that it provided more efficient processing, reduced processing burden, reduced battery consumption, and further eliminated the need for additional applications to be open and active in order to accomplish the same result." (Dkt. No. 35 at 14.) None of these constitutes an improvement to technology; rather, these are benefits of practicing the abstract idea claimed in the patents. *See Tuxis Techs., LLC v. Amazon.com, Inc.*, No. CV 13-1771-RGA, 2014 WL 4382446, at *5 (D. Del. Sept. 3, 2014) (the addition of an electronic communications device to perform an otherwise conventional step in "real time" does not save claim from invalidity); *see also Bancorp*, 687 F.3d at 1278 (performing a task more efficiently does not materially alter patent eligibility).

Symbology further contends that "the prior art indicated the need for multiple applications in order to detect symbology associated with an object within a digital image while the Asserted Patents indicate the contrary, namely, the use of a single application." (*Id.* at 13.) Combining abstract concepts performed by multiple components into the practice of those same concepts but on a single or fewer components does not shelter claims from ineligibility unless the claims implement the concept(s) using some specialized computer components or arrangement of technology. But merely claiming an abstract idea as a result without claiming a specific mechanism to achieve that result does not "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or improving "the way a computer stores and retrieves data in memory," *Enfish*, 822 F.3d at 1339. Unlike in *Enfish* or *DDR*, nothing in the asserted claims shows any unconventional methodology that would amount to a "specific improvement to the way computers operate." Therefore, the focus of the '752 and '369 Patents is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked

merely as a tool." *Enfish*, 822 F.3d at 1336.

In its Motion to Dismiss, Michaels cited several cases in which courts have found patents similar to the '752 and '369 Patents to be directed to abstract ideas. Symbology's Response does not meaningfully distinguish these cases, and given the similarity of these cases to the claims-at-hand, Symbology's reluctance to adequately address these cases speaks volumes. *See Nexrf Corp. v. Playtika Ltd.*, No. 320CV00603MMDCLB, 2021 WL 2874114, at *5 (D. Nev. July 7, 2021) ("As [defendant] argues, Claim 1 of the '229 patent is analogous to the claims found abstract in *Planet Bingo* . . . . And Plaintiff's decision not to address *Planet Bingo* in response to [defendant]'s motion to dismiss indeed suggests that Plaintiff has no convincing response.") (citation omitted). For example, in *Secured Mail*, the Federal Circuit found claims directed to encoding and decoding a bar code invalid under both *Alice* steps. *Secured Mail*, 873 F.3d at 907. The claims at issue in *Secured Mail* were "directed to the abstract process of communicating information about a mail object using a personalized marking"—i.e., barcodes. *See id.* at 911. Similarly, here, the claims are directed to the abstract concept of data recognition and retrieval using QR codes. The concepts at issue are almost identical. Symbology, however, attempts to distinguish *Secured Mail* by merely stating that "[i]n *Secured Mail*, the Federal Circuit addressed claims for methods for using a unique identifier on the outside of mail items for the purpose of communicating information about the object being mailed." (*See* Dkt. No. 35 at 14.) Then without providing any analysis, Symbology concludes that "the Asserted Patents here do not contemplate the type of activity that the Federal Circuit has warned against." (*See id.*) The claims of the asserted patents cannot be meaningfully distinguished from the *Secured Mail* claims and are thus invalid for the same reasons. *See Coding Techs., LLC v. Mississippi Power Co.*, No. 1:19-CV-994-LG-RHW, 2020 WL 8410430, at *4 (S.D. Miss. June 4, 2020) ("The Court finds that the '008 Patent is in all relevant respects similar

to the barcode-related patents found to embrace an abstract idea as in *Secured Mail*."; "Plaintiff attempts to distinguish *Secured Mail* by pointing to its steps of obtaining code information from the barcode, obtaining user and billing data corresponding to the code information from a database, and processing bill payment based on that data. These steps simply recite the process whereby a computer decodes a barcode, resulting in the abstract performance of a transaction.").

      **B.**   ***Alice* Step Two: The claims recite no inventive concept.**

   The claims of the asserted patents also contain no inventive concept, and Symbology's Response does not traverse this issue. The claims do not disclose any special way to implement the idea of data recognition and retrieval, nor do they require any specific, improved hardware or software configuration. To the contrary, none of the claimed steps or components has the specificity required to achieve eligibility. Neither the claims nor the specification describes how to implement the claims in any particular or inventive manner. *See Secured Mail*, 873 F.3d at 911 ("Merely reciting the use of a generic computer or adding the words 'apply it with a computer' cannot convert a patent-ineligible abstract idea into a patent-eligible invention."); *see also Coding Techs.*, 2020 WL 8410430, at *6 ("The Court also notes that '[t]he use of barcodes was commonplace and conventional' as early as 2001, as was the concept of a barcode-encoded URL.") (quoting *Secured Mail*, 873 F.3d at 912). The claims are therefore invalid under § 101. *See Secured Mail*, 873 F.3d at 912. "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). There is thus no limitation in the claims that could be considered an inventive concept.

   Symbology argues that the ordered combination of the asserted claims constitutes "an unconventional arrangement of elements" (Dkt. No. 35 at 16), but other than attorney arguments,

6

Symbology provides no support to demonstrate that the supposed combination or arrangement of the claim elements here amounts to a technological improvement. For example, Symbology states:

> The specific elements of Claim 1 of the '752 (and claim 1 of the '369) Patent were an unconventional arrangement of elements, because the prior art methodologies required multiple applications that would drain the battery of a mobile device; collect and/or track data without a user's knowledge; or otherwise increase the processing burden on the device. As a combination, the mobile device and background application of the visual detection module of Claim 1 of the '752 Patent was able to unconventionally provide a device that automatically detected symbology without the need for a user to use multiple applications or separate devices. By adding these specific elements of Claim 1 of the '752 Patent, an improved method was able to unconventionally provide the ability to detect symbology associated with an object within the digital image, using automatic and background processing.

*Id.* at 16; *see also id.* at 17. First, Symbology's contentions are unsupported by the asserted patents' specifications. Second, Symbology does not explain precisely which unconventional arrangement or combination of the claim elements leads to the purported improvement. The Federal Circuit addressed a similar issue in *Capital One*, when the patentee argued that the combination of its elements resulted in an inventive concept. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017). The court held, however, that "the claims do not recite particular features to yield" the advantages proffered by the purported combination. *Id.* "[T]he claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it. Our law demands more." *Id.* Same here.

Symbology's reliance on *Bascom* is also misplaced. While the claims at issue in *Bascom* were directed to the abstract idea of filtering content on the Internet, the Federal Circuit held at *Alice* step two that, accepting the plaintiff's allegations as true, the ordered combination of the limitations of the claims plausibly provided an inventive method of filtering Internet content, allowing both "the benefits of a filter on a local computer and the benefits of a filter on the ISP server." *Bascom*, 827 F.3d at 1350–51. As the court explained, this ordered combination did not

7

result in "the claims preempt[ing] all ways of filtering content on the Internet; rather, they recite a specific, discrete implementation of the abstract idea of filtering content." *Id.* at 1350 (emphasis added). Unlike the *Bascom* claims, the '752 and '369 Patents' claims do not recite a specific, discrete implementation of the abstract idea of data recognition and retrieval. Instead, they claim any manner of implementing this abstract idea.

Moreover, *Bascom* did not finally uphold the eligibility of the asserted patent but noted instead that "[o]n th[e] limited record, th[e] specific method of filtering internet content cannot be said, as a matter of law, to have been conventional or generic." *Bascom*, 827 F.3d at 1350. The plaintiff in *Bascom* had successfully pled that the claims' unconventional use of certain generic components could plausibly be considered an inventive concept. *Id.* Here, Symbology has not adequately alleged any such inventive concept. It has suggested benefits of the invention and the inventor's purported focus, but it has not connected those allegations to the claim language itself.

Additionally, even if Symbology were correct that the various claimed limitations recited in the claims were an inventive combination or arrangement (they are not), that purported inventiveness is irrelevant because the combination improves upon only the abstract idea of data recognition and retrieval. "At *Alice* step two, it is irrelevant whether [a particular limitation] may have been non-routine or unconventional as a factual matter." *BSG Tech*, 899 F.3d at 1290–91. Symbology does not and cannot claim that it invented or improved a specific computer, computer module, or other technology. The claims recite the use of existing hardware or software component, and thus, to the extent that is any improvement at all, it is an improvement to the abstract idea and improper grounds to support eligibility. *See id.*

Symbology also argues that "[u]nder Step two of the § 101 analysis, even if the claims are directed to an abstract idea, they are patent eligible because the claims do not monopolize or

preempt *all* methods or systems for detecting symbology within a digital image." (Dkt. No. 35 at 4-5) (emphasis in the original). Symbology's argument evidences a misunderstanding of the preemption concern "that undergirds [the] § 101 jurisprudence" and incorrectly suggests that lack of total preemption confers patent eligibility. *Alice*, 134 S. Ct. at 2358. The Federal Circuit has repeatedly held to the contrary. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1321 (Fed. Cir. 2016) ("the absence of complete preemption does not demonstrate patent eligibility"). There is no separate preemption test for patent eligibility; rather, the preemptive effect of a claim may be considered as part of the *Alice* analysis as to whether the claims are directed to an abstract idea or contain an inventive concept. As one trial court explained, "[p]reemption is the touchstone of the § 101 inquiry" and is therefore inherent in both steps of the *Mayo/Alice* analysis. *Virginia Innovation Scis., Inc. v. Amazon.com, Inc.,* 227 F. Supp. 3d 582 (E.D. Va. 2017).

That said, the claims of the asserted patents do raise preemption concerns in the context of the *Alice* analysis. The preemption concern requires a balancing of how much "future innovation is foreclosed **relative to the contribution of the inventor**." *Mayo*, 132 S. Ct. at 1303 (emphasis added). Here, the '752 and '369 Patents inventor's contribution is just the idea of data recognition and retrieval using generic, well-known technologies. There is no specificity in the claims to limit them to the inventor's purported invention—instead, they disproportionately preempt a field of endeavor without the patents adding much by way of the inventor's contribution.

### C. There are no factual or claim construction disputes preventing a ruling at the Rule 12 stage.

The issue of patent eligibility is ready for the Court's consideration because there are no factual or claim construction issues. Symbology contends it made "factual allegations [in its Complaint that] raise genuine issues of material fact." (Dkt. No. 5.) But as Michaels explained in its Motion to Dismiss, the statements in Symbology's Complaint do not contain factual

9

allegations—they are legal conclusions by which Symbology attempts to unilaterally declare that its patents are directed to eligible subject matter. (*See* Dkt. No. 30 at 16-18); *see also Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1366 (Fed. Cir. 2020) ("A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory.").

With respect to claim construction, Symbology incorrectly contends that "Motions to Dismiss at the Rule 12 stage are not ripe for determination when there is a claim construction issue that needs to be addressed." (Dkt. No. 35 at 8 citing *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1380 (Fed. Cir. 2019)). Symbology has misunderstood the law it cites. In *MyMail*, the Federal Circuit held that "**if the parties raise a claim construction dispute at the Rule 12[] stage**, the district court must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the § 101 analysis." *MyMail*, 934 F.3d at 1379. Here, there are no claim construction disputes as neither Michaels nor Symbology has proposed any claim constructions. And even if Symbology's descriptions of the term "visual detection assembly" are considered claim constructions (*see, e.g.*, Dkt. No. 35 at 11), the Court may and should adopt Symbology's proposed constructions for purposes of evaluating Michaels' Motion to Dismiss: those proposed constructions do not change the outcome, nor does Symbology explain how they might. *See Jedi Techs.*, 2017 WL 3315279, at *6. Consequently, this motion is ripe, and all of Symbology's arguments to the contrary are incorrect.

## II. CONCLUSION

For the foregoing reasons and the reasons stated in Michaels' Motion to Dismiss, Michaels respectfully requests this Court dismiss Symbology's Amended Complaint for failure to state a claim upon which relief can be granted. Michaels respectfully requests dismissal with prejudice because leave to amend would be futile.

Dated: August 31, 2021  Respectfully submitted,

*/s/ Ricardo J. Bonilla*
Neil J. McNabnay
Texas Bar No.24002583
Ricardo J. Bonilla
Texas Bar No. 24082704
Rodeen Talebi
Texas Bar No. 24103958
Sarika Patel
Texas Bar No.24073520
mcnabnay@fr.com
rbonilla@fr.com
talebi@fr.com
patel@fr.com

**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 19001
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

**ATTORNEYS FOR DEFENDANT MICHAELS STORES, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy has been electronically filed using the CM/ECF filing system on August 31, 2021, which automatically sends email notifications to all counsel of record and which will permit viewing and downloading of same from the CM/ECF system.

                                              */s/ Ricardo J. Bonilla*
                                              Ricardo J. Bonilla